1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

RICHARD K. MCDONALD,                    )
                                        )
8              Plaintiff,               )        CASE NO. C05-1827-RSM-MJB
                                        )
9        v.                             )        REPORT AND
                                        )        RECOMMENDATION
10   JO ANNE B. BARNHART,                )
     Commissioner of Social Security,   )
11                                       )
               Defendant.               )
12   _____)

13

14        Plaintiff Richard McDonald ("Plaintiff") appeals to the District Court from a final

15   decision of the Commissioner of the Social Security Administration (the

16   "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and

17   Supplemental Security Income ("SSI") disability benefits under Titles II and Title XVI

18   of the Social Security Act.  42 U.S.C. §§ 401-33 (2003); 42 U.S.C. §§ 1381-83(f).  For

19   the reasons set forth below, it is recommended that the Commissioner's decision be

20   REVERSED and REMANDED for further administrative proceedings.

21                           I.  PROCEDURAL HISTORY

22        Plaintiff filed his application for DIB and SSI on October 17, 2001, claiming that

23   he became disabled by May 31, 1999 (Tr. 119-21) because of injuries to his neck, knee,

24   and back, and because of his bipolar disorder (Tr. 147).  Plaintiff's application was

25

26   REPORT AND RECOMMENDATION
     PAGE - 1

1   denied initially (Tr. 44) and on reconsideration (Tr. 37-39).  Plaintiff requested a hearing

2   with an Administrative Law Judge ("ALJ") (Tr. 53), and on July 17, 2004, Plaintiff

3   testified and was represented by counsel in an administrative hearing before ALJ Nichols

4   (Tr. 594-628).  A vocational expert ("VE"), Olof R. Elofson, also testified.  (Tr. 620-26.)

5   The ALJ issued his decision finding Plaintiff not disabled on September 10, 2004.  (Tr.

6   23-34.)  The Appeals Council declined to review the ALJ's decision on September 10,

7   2005 (Tr. 11-12), and the ALJ's decision became the final decision of the

8   Commissioner.  20 C.F.R. § 404.984(b)(2).  On November 3, 2005, Plaintiff filed his

9   appeal for review by this Court.

10                                II.  THE PARTIES' POSITIONS

11          Plaintiff requests that the Court reverse the ALJ's finding that Plaintiff is not

12   disabled and order payment of benefits or remand this case for further administrative

13   proceedings.  Plaintiff argues that the ALJ erred in making his Residual Functional

14   Capacity ("RFC") determination by improperly evaluating medical evidence, finding

15   Plaintiff not entirely credible, and rejecting statements from Plaintiff's friend Ralinda

16   Morris.  Plaintiff further contends that the ALJ erred in finding Plaintiff not disabled at

17   step five of the sequential evaluation process.

18          The Commissioner argues that the ALJ applied correct legal standards and cited

19   substantial evidence, and his finding that Plaintiff is not disabled should therefore be

20   affirmed.

21                                III.  STANDARD OF REVIEW

22          This Court may set aside the Commissioner's denial of disability benefits when

23   an ALJ's findings are based on legal error or are not supported by substantial evidence in

24   the record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial

25

26   REPORT AND RECOMMENDATION
     PAGE - 2

evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Rather than affirming the Commissioner's decision by isolating a specific quantum of supporting evidence, the Court must consider the record as a whole and weigh evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

Claimants bear the burden of proving that they are disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimants are disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, a claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, a claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If a claimant does not have a "severe"

REPORT AND RECOMMENDATION
PAGE - 3

1   impairment, he or she is not disabled.  *Id.* at § (c).  At step three, the Commissioner will

2   determine whether the claimant's impairment meets or equals any of the listed

3   impairments described in the regulations.  A claimant who meets one of the listings is

4   disabled. *See Id.* at § (d).  If a claimant's impairments do not meet or equal a listing, the

5   Commissioner proceeds to step four.

6        At step four, the Commissioner evaluates the claimant's RFC and the physical

7   and mental demands of the claimant's past relevant work to determine whether the

8   claimant is able to perform his or her past relevant work.  *Id.* at § (e).  If a claimant is not

9   able to perform his or her past relevant work, the burden shifts to the Commissioner at

10  step five to show that the claimant can perform some other job that exists in significant

11  numbers in the national economy, taking into consideration the claimant's RFC, age,

12  education, and work experience.  *Id.* at § (f); *Tackett*, 180 F.3d at 1100.  If the

13  Commissioner finds that the claimant is unable to perform other work, then the claimant

14  is disabled.

## V.  SUMMARY OF THE RECORD EVIDENCE

16       Plaintiff was insured for disability under Title II of the Social Security Act

17  through May 31, 1999, the onset date of his alleged disability.[1]  (Tr. 119.)  Born in

18  November of 1970 (*Id.*), Plaintiff was 28 years old at the onset of his alleged disability

19  and 33 years when the ALJ issued his decision (Tr. 34).  Plaintiff has a general

20  equivalency diploma ("GED") (Tr. 53) and has past relevant work as a telemarketer, a

21  construction laborer, a warehouse worker, and as a temporary laborer (Tr. 148).

22       Because the parties have adequately summarized the record in their briefing, and

23  because much of the record evidence is not relevant given the scope of the issues, the

24

25       [1]  There is no insured status requirement for Title XVI benefits.

26  REPORT AND RECOMMENDATION
    PAGE - 4

1  Court will not summarize the record here.  Relevant evidence will be referenced in the

2  discussion as necessary.

3  VI.  THE ALJ'S DECISION

4  At step one, the ALJ found the Plaintiff was not engaged in substantial gainful

5  activity.  (Tr. 33, Finding No. 2.)  At step two, the ALJ found that Plaintiff's bipolar

6  disorder, history of alcohol dependency, personality disorder, and his injuries to both

7  knees and his back were severe impairments.  *(Id.*, Finding No. 3.)  At step three, the

8  ALJ found that Plaintiff's impairments did not meet or equal a listed impairment.  *See* 20

9  C.F.R. Pt. 404, Subpt. P, App. 1; (Tr. 33, Finding No. 4).  The ALJ determined that

10  Plaintiff retains an RFC that allows him to lift and carry 20 pounds occasionally and 10

11  pounds frequently, stand and sit for about six hours, walk for up to 30 minutes for about

12  four hours in an 8-hour workday.  *(Id.*, Finding No. 6.)  Additionally, the ALJ found that

13  Plaintiff's RFC restricts him from using foot controls, walking on rough ground, and

14  stooping frequently but that Plaintiff can occasionally climb, balance, kneel, crouch, and

15  crawl.  *(Id.)*  The ALJ found that Plaintiff was further limited in his ability to perform

16  repetitive pushing and pulling activities with his right arm; that he is limited to fairly

17  repetitive, structured work; and that his bipolar and personality impairments restricted

18  him to working alone without close proximity to coworkers or the public. *(Id.)*  Finally,

19  the ALJ concluded that Plaintiff's RFC allowed him to perform a significant range of

20  light work.  (Tr. 34, Finding No. 11); 20 C.F.R. §§ 404.1567 and 416.967.

21  At step four, the ALJ found that Plaintiff was unable to perform any of his past

22  relevant work (Tr. 34, Finding No. 7) and that he has no transferable skills from any past

23  relevant work or that transferability of skills is not an issue in this case.  *(Id.*, Finding

24  No. 10).  At step five, the ALJ found that Plaintiff could perform a significant number of

25

26  REPORT AND RECOMMENDATION
PAGE - 5

jobs in the national economy, specifically: table worker, laundry worker, and night watchman.  (*Id.*, Finding No. 12.)

## VII.  DISCUSSION

Plaintiff argues that because the ALJ improperly rejected medical and testimonial evidence, the ALJ omitted significant limitations from his RFC finding.  Specifically, Plaintiff argues that the ALJ erred in evaluating the medical evidence, in dismissing some of Plaintiff's alleged limitations by finding Plaintiff not entirely credible, and in dismissing statements from his friend Ralinda Morris.  The Commissioner responds that the ALJ applied correct legal standards and cited substantial evidence in evaluating medical evidence, Plaintiff's credibility, and lay testimony, and that the limitations detailed in Plaintiff's RFC are therefore complete and accurate.

A.  The ALJ's Rejection of Medical Evidence

Plaintiff argues that the ALJ improperly rejected some medical opinions and evidence while  erroneously relying on other opinions and evidence.  The Commissioner responds that the ALJ stated clear and convincing reasons supported by substantial evidence in the record for rejecting some opinions and accepting others, or alternatively, that if the ALJ erred his error was harmless.

Opinions from treating and examining physicians, if not contradicted by another doctor, may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If contradicted by another doctor, the opinions of treating and examining physicians "can only be rejected for specific and legitimate reasons that are supported by substantial evidence."  (*Id.* at 831.)

1.  Dr. McConnell

REPORT AND RECOMMENDATION
PAGE - 6

Plaintiff argues that the ALJ should have accepted the opinion of Dr. Robert McConnell, an examining orthopedic surgeon, that Plaintiff's knee impairments limited him to sedentary work. (Tr. 346-47.) Plaintiff asserts that Dr. McConnell's opinion deserves more weight because he is a specialist. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Instead, Plaintiff argues that the ALJ did not address Dr. McConnell's opinion.

The Commissioner argues that the ALJ's oversight amounts to harmless error because the table worker position cited by the ALJ at step five is a sedentary job. The Commissioner also points out that the reviewing court must consider all of the record evidence to determine whether it contains substantial evidence supporting the ALJ's findings. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). No "magic words" are required from the ALJ to reject a doctor's opinion; rather, this Court can infer the ALJ's reasons for rejecting a doctor's opinion. *Magallanes v. Bowen*, 881 F.2d at 755.

The ALJ acknowledged Dr. McConnell's opinion (Tr. 27), but did not reject it explicitly. However, a rejection of the notion that Plaintiff is limited to sedentary work is implied in the ALJ's finding that Plaintiff can perform light work. (Tr. 34, Finding No. 11.) The Court finds that the ALJ relied on substantial evidence in the record to determine that Plaintiff could perform light work. The ALJ discussed Plaintiff's physical limitations at length. (Tr. 30-31.) He noted that medical consultants from the State Agency determined that Plaintiff was capable of performing light work. (Tr. 358.) He also noted that examining orthopedic physician Dr. Alexis Falicov thought that Plaintiff's arthritis and scarring may have given some stability to his left knee and that the doctor did not recommend any type of reconstruction for that knee. (Tr. 460.)

Finally, the ALJ noted that Plaintiff walked, hiked (Tr. 464), and rode a bike (Tr. 619).[2] The above evidence constitutes clear and convincing reasons cited by the ALJ to reject Dr. McConnell's isolated finding that Plaintiff is limited to sedentary work.  The Court can infer that the ALJ found the above evidence more compelling without requiring the ALJ to specifically state as much.  Therefore, the ALJ did not err in rejecting Dr. McConnell's opinion.

      2.  Dr. Bernardez-Fu

Plaintiff argues that the ALJ should have considered the opinion of Dr. Robert Bernardez-Fu, a State Agency consultant, that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights.  (Tr. 360.)  Plaintiff asserts that the ALJ should have considered this non-examining source as "other" opinion evidence as required by 20 C.F.R. §§ 404.1527(f) and 416.927(f) because this limitation could affect Plaintiff's ability to perform as a table worker.  The Commissioner's brief does not address this argument.

The record shows that the ALJ acknowledged Dr. Bernardez-Fu's assessment that Plaintiff could perform light work subject to some postural limitations, but did not address the doctor's finding that Plaintiff should avoid concentrated exposure to hazards. (Tr. 27, 30, 358).  The Commissioner is not required to discuss all evidence presented to her.  *See Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).  However, Plaintiff has asserted that he is unable to perform two of the three jobs identified by the ALJ and that the remaining table worker job may require exposure to hazardous conditions.  The undersigned

---

    [2]  Plaintiff testified that he no longer rides a bike; however, he did ride a bike for a few months in 2001, after the onset of his alleged disability.  *(Id.)*

REPORT AND RECOMMENDATION
PAGE - 8

concludes that further administrative proceedings are warranted to determine whether avoidance of concentrated exposure to hazards should be incorporated into Plaintiff's RFC, and if so, whether such a limitation would impinge on his ability to perform as a table worker.

3.  State Agency Medical Consultants

Plaintiff next argues that the ALJ improperly dismissed the opinions of Dr. Robert Parker and Dr. Carla Hellekson, state agency medical consultants.  The Commissioner responds that the ALJ analyzed the doctors' opinions and found that the examiners relied mostly on Plaintiff's subjective reports rather than objective medical findings, and therefore accorded them little weight.  (Tr. 30.)

Dr. Parker completed an assessment of Plaintiff in February of 2002 and diagnosed Plaintiff as depressed with psychotic features and suffering from bipolar disorder, personality disorder, and marijuana and alcohol dependence in fragile remission.  (Tr. 353.)  Dr. Hellekson diagnosed Plaintiff with ADHD, bipolar disorder, and antisocial personality disorder.  (Tr. 488-92.)  She also found that Plaintiff suffered from moderate to severe limitations in cognitive and social functioning and from alcohol abuse.  (Tr. 500-03.)

The ALJ accepted the diagnoses of bipolar disorder, a history of substance abuse, and personality disorder (Tr. 29), all of which he listed among Plaintiff's severe impairments (Tr. 33, Finding No. 3).  However, in evaluating Plaintiff's RFC, he rejected findings from "some examining medical sources," presumably including Dr. Parker and Dr. Hellekson, that Plaintiff was markedly limited in some factors of cognitive and social functioning.  (Tr. 30.)  In so doing, the ALJ reasoned that these

REPORT AND RECOMMENDATION
PAGE - 9

1  sources relied on Plaintiff's "own reports that he was not abusing any substances." (*Id.*)

2  The ALJ's reasoning implies that these findings were not reliable because Plaintiff was

3  abusing drugs and alcohol.  The ALJ went on to state that he accepted the opinion of

4  state agency consultant Dr. Reade, an opinion corroborated by Dr. Alexander Fisher,

5  that Plaintiff's ability to understand and remember is within the average range unless

6  impeded by the effects of drugs and alcohol. (*Id.*; Tr. 362-65.)  The ALJ therefore

7  rejected medical opinions which he believed did not factor out alleged drug and alcohol

8  abuse ("DAA"), and accepted medical opinions which he believed did factor out DAA.

9      The Social Security Administration does not award disability benefits when DAA

10  is a contributing factor material to the determination of disability.  42 USC §§

11  423(d)(2)(c), 1382c(a)(3)(J); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

12  However, for the ALJ to rely on DAA to reject medical opinions is problematic because

13  DAA may only be factored out after a claimant has been found disabled.  *Bustamante v.*

14  *Masannari*, 262 F.3d 949, 955 (9th Cir. 2001).  "[A]n ALJ must first conduct the

15  five-step inquiry without separating out the impact of alcoholism or drug addiction."  *Id.*

16  If an ALJ finds a claimant disabled, the ALJ should repeat the five-step sequential

17  evaluation process, discounting the effects of DAA, to determine whether the claimant

18  would still be found disabled absent DAA.  *Id.*; 20 C.F.R. §§ 404.1535 and 416.935.

19      Here, the ALJ rejected Dr. Hellekson and Dr. Parker's opinions and accepted Dr.

20  Reade and Dr. Fisher's opinions based on his *premature* factoring-out of DAA rather

21  than on clear and convincing reasons supported by substantial evidence in the record.

22  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *Winans v. Bowen*, 853 F.2d 643,

23  647 (9th Cir. 1987).  Therefore, the undersigned concludes that the ALJ erred in

24  assessing Dr. Hellekson and Dr. Parker's opinions.

25
26  REPORT AND RECOMMENDATION
    PAGE - 10

//              //              //

### 4.  Nurse Martin

Plaintiff asserts that the ALJ did not properly evaluate the opinion of Nurse Nancy Martin, who evaluated Plaintiff.  (Tr. 492-99.)  The Commissioner responds that the ALJ properly considered Nurse Martin's opinion but accorded it no significant weight because it was not an acceptable medical source.  (Tr. 32.)

Nurses are not acceptable medical sources under 20 C.F.R. §§ 404.1513(a) and 416.913(a), but evidence from other sources, including nurses, may be used to show the severity of a claimant's impairments and how they affect a claimant's ability to work.  20 C.F.R. §§ 404.1513(d); 416.913(d).  A nurse's opinion may be given less weight than that of an acceptable medical source.  *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  An ALJ is free to reject or give less weight to an "other" source, but must give reasons for doing so that are germane to the particular source.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

In May of 2004, Nurse Martin diagnosed Plaintiff with bipolar disorder, polysubstance abuse in early full remission, traits of antisocial personality disorder, and chronic pain due to arthritis of the bilateral knees.  (Tr. 505.)  In June of 2004, she filled in a check-box form indicating that Plaintiff's mental impairments caused moderate to severe limitations in several factors of cognitive and social functioning.  (Tr. 494.)

As noted in Subsection A(3), the ALJ accepted Plaintiff's diagnoses of bipolar disorder, a history of substance abuse, and personality disorder.  (Tr. 29.)  The ALJ need not state reasons germane to Nurse Martin for rejecting portions of her opinion that are duplicative of opinions from acceptable medical sources.  The undersigned concludes, however, that to the extent that Nurse Martin's opinion is unique, the ALJ has failed to

REPORT AND RECOMMENDATION
PAGE - 11

state reasons germane to Nurse Martin for rejecting it.

    5.  GAF Scores

    Plaintiff argues that the ALJ improperly rejected his Global Assessment of Functioning ("GAF") scores, which ranged from 20 (Tr. 380) to 35 (Tr. 505) and 40 (Tr. 538).  The Commissioner did not respond to this argument.  Nonetheless, the ALJ need not have addressed Plaintiff's GAF scores separately from the treatment providers who assigned them because GAF scores are not directly correlated with disability listings. *See* 65 Fed. Reg. 50764-50765 (Aug. 21, 2000); *Vincent ex rel. v. Heckler*, 739 F.2d at 1394-95.

B.  The ALJ's Assessment of Plaintiff's Credibility

    The ALJ is responsible for determining credibility.  *Andrews*, 53 F.3d at 1039. An ALJ's credibility determination must be based on clear and convincing reasons that are supported by substantial evidence in the record.  *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  In making a credibility determination, the ALJ may consider at least the following factors: "[claimant's] reputation for truthfulness, inconsistencies either in [his] testimony or between [his] testimony and [his] conduct, [claimant's] daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [he] complains."  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (internal quotations omitted).

    1.  Physical Limitations

    Plaintiff asserts that the ALJ failed to provide specific reasons for rejecting Plaintiff's testimony that he is unable to: get out of bed two days each week because of knee pain (Tr. 601), push or pull things without some pain (Tr. 606), and sit for longer

REPORT AND RECOMMENDATION
PAGE - 12

than 45 minutes without stretching his legs or for more than 30 minutes without changing position (Tr. 604-05). The Commissioner responds that the ALJ was entitled to find Plaintiff not credible based on his surly disposition in the administrative hearing and on his activities. (Tr. 30-31.)

Contrary to Plaintiff's assertions, the ALJ found that Plaintiff's allegations regarding his physical limitations were generally credible. (Tr. 30.) The ALJ acknowledged Plaintiff's inability to walk for prolonged periods, his knee range of motion difficulties, and limitations in pushing and pulling with his upper right arm. *Id.* With regard to physical limitations which Plaintiff claims the ALJ did not specifically address, for example, Plaintiff's alleged inability to get out of bed two days each week on account of his knee pain, the ALJ cited Plaintiff's activities as suggesting that he was not as limited as he alleged. The record reflects that Plaintiff went hiking and walking (Tr. 464), although Plaintiff defined hiking as a half-hour walk (Tr. 615-16). Plaintiff also biked. (Tr. 619-20.) Plaintiff quit biking after a few months, which he attributed to his bike being stolen and to his being "kind of dangerous on a bike." (Tr. 619.) There is no evidence that his hazardous riding was caused by his alleged disability. The activities cited by the ALJ constitute substantial evidence supporting his finding that Plaintiff's claims of more extreme physical limitations were not credible.

2. Mental Limitations

Plaintiff asserts that the ALJ did not provide adequate reasons for rejecting his testimony that his mind raced and his memory was poor during manic phases (Tr. 611) and that he had poor concentration (Tr. 616).[3] The Commissioner responds that the ALJ

---

[3] The Court does not address Plaintiff's argument that the ALJ rejected Plaintiff's testimony that he is unable to work effectively with coworkers and supervisors because the ALJ provided for this limitation in Plaintiff's RFC. (Tr. 31.) It is of note that Plaintiff's problems with

REPORT AND RECOMMENDATION
PAGE - 13

was entitled to find Plaintiff not credible based on his non-compliance with prescribed medical treatment and his inconsistent statements regarding his drug and alcohol abuse. (Tr. 30-31.)

In evaluating the credibility of a claimant's testimony regarding his impairments, an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284 (emphasis added). The record indicates that Plaintiff was difficult to engage and behaved inappropriately during therapeutic efforts. (Tr. 287.) At one time he stopped taking medications or going to his mental health clinic. (Tr. 428.)

Plaintiff argues that he stopped his medications because he was poor, homeless, and depressed, and felt the medications were not helping him. He further asserts that his medical noncompliance was consistent with behavior expected of a person suffering from bipolar disorder. The record supports Plaintiff's arguments. He was homeless and living in a tent in the woods during the period of alleged noncompliance. (*Id.*) Additionally, Plaintiff's failure to follow prescribed treatment or engage in therapeutic efforts are isolated points in the record, the bulk of which documents Plaintiff's visits to care providers and following their treatment. The Court finds that Plaintiff has adequately explained why he failed to follow medical treatment on occasion.

The Commissioner next argues that the ALJ found Plaintiff not credible based on inconsistent statements regarding his drug and alcohol abuse. The record supports the Commissioner's argument to a certain extent: for example, Plaintiff claimed to be clean and sober to one doctor while at the same time reporting that he used marijuana occasionally. (Tr. 489, 379.) However, in his opinion, the ALJ did not rely on

his colleagues did not begin until 2000, after his alleged disability onset date. (Tr. 609.)

REPORT AND RECOMMENDATION
PAGE - 14

inconsistent statements regarding DAA to find Plaintiff not credible.  Rather, the ALJ found Plaintiff not credible because DAA "plays a much larger role in (Plaintiff's) alleged limitations than he is willing to admit."  (Tr. 30.)  In sum, the ALJ reasoned that because he attributes many of Plaintiff's alleged limitations to DAA, Plaintiff's claimed limitations are not credible  (*Id.*)  This reasoning again amounts to premature factoring-out of the effects of DAA to find Plaintiff not as limited as he claims, and perhaps as a consequence, not disabled.  As discussed in Subsection (A)(3), an ALJ may not factor out the effects of DAA unless he or she has first gone through the sequential evaluation process and found a claimant disabled, after he or she repeats the sequential evaluation process with the effects of DAA factored out.  *Bustamante*, 262 F.3d at 955.

The ALJ's credibility finding as to Plaintiff's mental limitations was erroneous because Plaintiff adequately explained his medical noncompliance and because the ALJ prematurely factored DAA effects to dismiss some of Plaintiff's limitations.

C.  The ALJ's Evaluation of Ralinda Morris's Statements

Plaintiff argues that the ALJ did not provide germane or legitimate reasons for rejecting the statements of Ralinda Morris, a friend of Plaintiff's who filled out a questionnaire indicating that Plaintiff is easily angered and frustrated, does not finish projects he starts, and is forgetful.  (Tr. 168-72.)  The Commissioner responds that, despite not providing reasons specific to Ms. Morris for rejecting her statements, the Court can infer that the ALJ rejected Ms. Morris's statements for the same reasons he rejected Plaintiff's statements because their statements were similar.

The Commissioner's argument is not persuasive in light of the Court's determination that the ALJ failed to state clear and convincing reasons to reject Plaintiff's testimony.  "[F]riends and family members in a position to observe a

REPORT AND RECOMMENDATION
PAGE - 15

1   claimant's symptoms and daily activities are competent to testify as to (the claimant's)

2   condition...If the ALJ wishes to discount the testimony of the lay witnesses, he must give

3   reasons that are germane to each witness." *Dodrill*, 12 F.3d at 918-19.  Under *Dodrill*,

4   this Court concludes that the ALJ erred in failing to give germane reasons for rejecting

5   lay witness testimony.

6   D.  Step Five Analysis

7       Plaintiff argues that because the ALJ's RFC finding was erroneous, the

8   hypothetical he posed to the VE did not accurately reflect Plaintiff's limitations, and the

9   ALJ therefore did meet his burden at step five of showing that Plaintiff could work.

10  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The Commissioner responds

11  that the ALJ's RFC finding was accurate and that he properly relied on a VE's testimony

12  to find Plaintiff not disabled.  (Tr. 32.)

13      This Court need not evaluate this claim because Plaintiff's RFC may be adjusted

14  on remand, requiring the ALJ to engage in a step five analysis afresh.

15                          VIII.  CONCLUSION

16      The Commissioner's determination to deny Plaintiff benefits is not free of legal

17  error, nor is it supported by substantial evidence.  Based on the record evidence, the

18  undersigned recommends that the Commissioner's decision be REVERSED and

19  REMANDED for further administrative proceedings.  A proposed Order accompanies

20  this Report and Recommendation.

21      DATED this 27th  day of October, 2006.

22

23                                      _____

24                                      MONICA J. BENTON
                                        United States Magistrate Judge

25

26  REPORT AND RECOMMENDATION
    PAGE - 16